**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CANDICE A. DAVIS,            )
                               )
         Movant,        )
                               )
     v.                )         No. 4:19-CV-15 RLW
                               )
UNITED STATES OF AMERICA,    )
                               )
        Respondent.     )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Movant Candice A. Davis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1), with an accompanying Memorandum in Support (ECF No. 1-1).[1]  The United States filed a Response in opposition (ECF No. 12).  Movant did not file a Reply in support of her Motion to Vacate, but filed three Motions for Summary Judgment (ECF Nos. 8, 13, 15) and "Petitioner['s] Motion Request for the Court to Change the Court's Case Management Order From Track 4, Because of Petitioner's Changed Circumstances Due to Being Release and Subsequent Prejudice Petitioner Suffers From the Court's Restitution Order in this Case" (ECF No. 16).  This matter is fully briefed and ready for decision.  For the following reasons, Movant's § 2255 Motion will be denied without an evidentiary hearing and her other motions will be denied as moot.

**I.  Procedural Background**

Movant Davis and a codefendant, Mr. Stacey Wilson, were indicted on December 17, 2015, by a federal Grand Jury for the Eastern District of Missouri and charged with one count of wire fraud in violation of 18 U.S.C. § 1343 and 2; one count of access device fraud in violation of 18

---

[1]While the Motion to Vacate is signed by Ms. Davis under penalty of perjury (ECF No. 1 at 13), the Memorandum in Support is not.  Therefore, the Court does not treat the allegations in the Memorandum in Support as an affidavit.

U.S.C. § 1029(a)(2), (b)(1), and 2; and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A and 2.  United States v. Stacey Wilson and Candice A. Davis, No. 4:15-CR-572 RLW (E.D. Mo.) (ECF No. 1).[2]  The defendants were charged with participating in a conspiracy to open bank accounts so that the accounts could be used to pass and utter stolen and fraudulently obtained checks between November 1, 2013, and December 1, 2015.  (ECF No. 109 at 2).

Davis waived her right to file pretrial motions (ECF Nos. 38, 45) and the case was set for trial.  Davis's first Court-appointed attorney filed a motion to withdraw from her representation on May 20, 2016, that stated a "breakdown in the attorney/client relationship has developed to the extent that substantive communication between counsel and defendant is no longer possible," that Davis "does not trust her attorney and has advised counsel that she intends to pursue an ineffective assistance of counsel claim," and that trust and communication between defendant and counsel and the attorney/client relationship are irreparably broken and as defendant believes counsel is not looking out for her best interests."  (ECF No. 59).  The Court conducted a hearing on the motion to withdraw at which it heard from Davis and her attorney, and then granted the motion on May 27, 2016. (ECF No. 72).  The Court appointed attorney JoAnn Trog to represent Davis.  (ECF No. 71).

Davis entered into a written guilty plea agreement on August 18, 2016 (ECF No. 109).  Davis pleaded guilty to counts one through four of the indictment in return for the Government's agreement to move to dismiss count five at the time of sentencing.  (ECF No. 109 at 1).  In the plea agreement, Davis admitted that she and her co-conspirator, Stacey Wilson, engaged in the charged conduct between November 1, 2013 and December 1, 2015.  (Id. at 2, 4, 8).  Davis stipulated that she and Wilson recruited more than 15 individuals to participate in the fraudulent

---

[2]The Court granted the Government's unopposed Motion to Correct Clerical Error, which corrected Defendant's name to read "Candice A. Davis" rather than Candace A. Davis, on August 22, 2016.  (ECF No. 114, Case No. 4:15-CR-572 RLW).

scheme (id. at 5), and that their scheme had multiple layers. (Id. at 8). There were disputes between Davis and the Government as to some of the sentencing enhancements and the reduction for acceptance of responsibility, but Davis agreed to a two-level enhancement pursuant to § 2B1.1(b)(10)(C) because the offense involved sophisticated means. (ECF No. 109 at 7).

Davis appeared before the Court with counsel and expressed a desire to enter a plea of guilty. (ECF No. 148, Plea Tr. at 2). The Court placed Davis under oath and conducted a colloquy with her to ascertain whether her guilty plea was knowing and voluntary. The Court inquired, among other things, whether she understood the charges against her, whether she had adequate time to discuss them with her attorney (id. at 4), and whether she understood her trial rights and that she would be giving these up by entering a plea of guilty (id. at 5-7). Davis answered in the affirmative to each inquiry.

The Court asked Davis if she had read and discussed the plea agreement with her attorney before she signed it, and if there was anything in it she disagreed with or did not understand. Davis responded that she had signed the plea agreement, had read it and discussed it with her attorney (Plea Tr. at 7), that everything in it was true to the best of her knowledge and understanding (id. at 7), and that she understood and agreed with everything in it. (Id. at 7-8). The Court related the elements of the charges against Davis and asked if she had any questions about them, and Davis responded that she did not. (Id. at 9-10).

The Court then asked the Assistant United States Attorney to state what facts the Government would prove beyond a reasonable doubt if the case were to go to trial, and directed Davis to listen carefully as she would be asked questions:

> MS. BERRY: Yes, Your Honor.
>
> If this matter had gone to trial, the Government would have shown that between November 1st, 2013, and December 1st, 2015, Stacey Wilson and Candice Davis recruited individuals to open checking accounts at US Bank with nominal

amounts of money. They also recruited individuals who had existing checking accounts with debit cards at other federally-insured institutions.

The individuals that were recruited provided Wilson and Davis with their debit cards and checks issued on the accounts. Wilson and Davis also received checks that had been stolen from crime victims.

As early as November 1st, 2013, Davis' vehicle was identified as the transportation used by Wilson during the criminal activity. Upon the receipt of debit cards and checks, Wilson and Davis drafted the fraudulently-obtained checks in the amount of $195 to $2,300 before depositing them into different fraudulently-issued accounts through electronic wire transmissions of the check images to the financial institutions or through direct deposits.

In one such transaction, on April 24th, 2015, Wilson and Davis used US Bank's remote capture system deposit point to deposit Check No. 200 which had been drawn on the account of L.B. into the account of D.M. As soon as the funds were deposited, Wilson, Davis and others obtained funds from the institutions through automated teller machine transactions, counter withdrawals or debit card purchases. Unbeknownst to the financial institutions, the accounts upon which the checks had been drawn were artificially inflated or had been closed as being fraudulent.

With regard to D.M.'s account into which the L.B. check had been deposited, $840 was fraudulently withdrawn through ATM transactions by Wilson, Davis and their confederates before the bank was aware that the account's balance had been artificially inflated. As a result, Wilson, Davis and others obtained and attempted to obtain more than $79,000 in funds which were within the care, custody and control of federally-insured financial institutions between September 1st, 2013, and December 1st, 2015.

Wilson and Davis recruited more than 15 individuals to open accounts at US Bank or provide their own bank account information.

Debit cards were issued to L.K.B., E.D.C., D.A.M., E.S.P., D.Z.M., A.W., T.T.K., B.R.R., D.T., B.S.G., J.C., J.M.R., C.W.D., D.J.T., R.G.C., J.G., G.R.W., B.P., B.W.H., D.L. and T.L.K, and they were used and attempted to be used in this district between January 3rd, 2015, and June 17th, 2015, to obtain more than one thousand dollars from the financial institutions. One of the individuals Wilson recruited to assist in the scheme was a man who had been adjudged to be mentally retarded and had to be assisted with his financial matters by his mother.

As the majority of the fraudulently-obtained transactions were conducted through US Bank and Bank of America, US Bank and Bank of America are institutional victims with the actual losses.

In addition, the accounts and names of more than nine individuals had been fraudulently used in the scheme without their knowledge and consent.

4

In particular, on March 24th, 2015, and August 2nd, 2015, the stolen checks of D.S., R.S. and S.D. were deposited into financial accounts of R.H. and R.R. Davis and Wilson aided and abetted, counseled and induced one another in the possession and use of the stolen D.S. checks in the fraudulent scheme.

Surveillance photographs from a bank branch located in St. Louis County captured Davis depositing Check 155 which was drafted in the amount of $200 and bore the forged signature of D.S. into the account of R.H. on March 24th, 2015. Wilson deposited stolen and forged Check No. 153 dollars -- I'm sorry -- forged Check No. 153 into the account on the same date. That check contained the forged signature of S.D. and was drafted in the amount of $198.

Q (By The Court) Ms. Davis, did you go over those facts carefully with Ms. Trog?

A Yes.

Q Is there any disagreement about them?

MS. TROG: If I may, Your Honor.

THE COURT: Sure.

MS. TROG: We do disagree with the amounts that -- that would be attributed.

THE COURT: But not to the actions.

MS. TROG: Well, ---

THE COURT: I mean you disagree with the amounts but not to how it was achieved.

MS. TROG: Well, a little bit further than that, Your Honor.

THE COURT: Go ahead.

MS. TROG: We also would disagree that – that Ms. Davis should be construed as a leader or supervisor as are outlined in our disagreements with the Government regarding the guideline calculations. We will admit that there were certain transactions, but we -- we -- I think it's always been our position, and Ms. Berry is aware of it, Your Honor, yes, there was some wrongdoing, but we adamantly disagree with the amount of loss attributable as well as to her actual participation in this.

THE COURT: And both of those things would attribute -- would affect the Sentencing Guidelines at sentencing.

MS. BERRY: Yes, Your Honor. And they are recognizing the guideline calculations.

THE COURT: Right. So we don't need to address those today <u>so long as she admits that she participated in them</u>.

MS. BERRY: Yes, sir.

MS. TROG: That's my understanding, yes, sir.

THE COURT: Right. Okay.

Q (By The Court) <u>Did you do those things that were just stated, Ms. Davis</u>?

A <u>Yes, Your Honor</u>.

(Plea Tr. at 10-14) (emphases added).

The United States Probation Office prepared a Disclosure Presentence Investigation Report ("Disclosure PSR") (ECF No. 115).  Through counsel, Davis asserted a total of twenty-seven objections to approximately thirty-eight paragraphs in the Disclosure PSR (ECF No. 119), on the following issues:

- the characterizations of her Pretrial Services records and violation reports filed by the Federal Pretrial Services Office between March 17, 2016 and June 20, 2016;

- the calculation of loss based on the date her involvement in the offense began;

- information concerning the allegation that she recruited approximately 50 individuals to open checking and savings accounts, including one designated as "BJ," who was determined to be mentally disabled;

- the length of time she participated in the criminal activity;

- the assertion that she recruited any participants;

- the failure of the presentence investigation report to separately delineate her conduct from that of her co-conspirator;

- the number of victims;

- the criminal history calculations;

- the inclusion of contradictory personal data received from her family members; and

- the amount of restitution.

(ECF No. 119 at 1-7).

Despite stipulating in the written plea agreement to the imposition of the sophisticated means enhancement pursuant to § 2B1.1(b)(10)(C) (ECF No. 109 at 7), Davis objected to the inclusion of the stipulated enhancement in the Disclosure PSR. (ECF No. 119 at 5, ¶ Q). As a result of Davis' objections to the stipulated enhancement and the basis in fact, the final PSR removed the reduction for acceptance of responsibility that had been included in the Disclosure PSR. (Disclosure PSR, ECF No. 115 at 14, ¶ 46; Final PSR, ECF No. 128 at 13, ¶ 33, at 14, ¶ 46).

Despite the signed stipulation of facts in the plea agreement, Davis disputed her involvement at the start of the offense and in several acts throughout the offense, including her participation in withdrawals from the fraudulent bank accounts. (ECF No. 128 at 13, ¶ 33). At the sentencing hearing, the Government introduced the testimony of United States Postal Inspector Anne Kriedt to establish facts corroborating Davis' stipulation that she participated in the criminal conduct in 2013 and 2014. (ECF No. 149, Sent. Tr. at 7-10, 19-20). The government also introduced into evidence four exhibits consisting of US Bank surveillance video screen shots from May 5, 2014, that Kriedt testified showed Davis "at an ATM drive-up at a US Bank depositing a check on a closed account, . . . in her vehicle that was used back in 2013." (Sent. Tr. at 8:19-10:6; ECF No. 131, Clerk's Ex. List). Inspector Kriedt testified that on May 5, 2014, Davis deposited a check in the amount of $305 into the account of a person with the initials G.J. Kriedt was able to identify with US Bank's assistance that G.J.'s account was opened in order to be used fraudulently, and Davis was identified through the surveillance photos. (Sent. Tr. 9:1-23).

Defense counsel cross-examined Inspector Kriedt in an effort to challenge the witness's testimony concerning evidence as to Davis's involvement in offense conduct in 2013 and 2014 (id. at 16-19).

The Government also introduced testimony from Inspector Kriedt to establish that Davis recruited one victim, B.J., a mentally disabled individual whose recruitment was originally attributed in the PSR to her co-defendant Stacey Davis. (Id. at 6-7). Defense counsel cross-examined Inspector Kriedt in an effort to convince the Court of B.J.'s inability to act as a reliable source of Inspector Kriedt's information (id. at 11-16).

The Court then heard and ruled on Davis's objections to the PSR. (Sent. Tr. at 21-31). With respect to acceptance of responsibility, Davis claimed she was entitled to receive a two-level reduction for acceptance of responsibility because she pled guilty. (Id. at 31-32). According to Davis, her objection to the date she began her criminal participation should not have impacted her ability to receive the reduction. (Id. at 31; ECF No. 109 at 8). In response to the Court's statement that some of Davis' objections "seem to walk back the agreement [she] had in the Guilty Plea" agreement (Sent Tr. at 32), Davis continued to assert that she did not join the conspiracy until 2015, and that only conduct occurring in 2015 was reasonably foreseeable to her. (Id.).

In response, the Government pointed to Inspector Kriedt's testimony about surveillance photos that captured Davis' conspiratorial activities on May 5, 2014. (Sent Tr. at 33). The Government argued that even if the Court were to exclude the 2013 conduct, Davis's depositing of a check into a fraudulently opened account in May 2014 would result in the same criminal history calculation as did the Probation Office's inclusion of the 2013 conduct. (Id.). The Government also argued that Davis's objection was frivolous, and this provided a basis for denying the acceptance of responsibility reduction. (Id.). After hearing the parties' arguments, the Court overruled Davis's objection to the loss of the acceptance of responsibility reduction pursuant to

§ 3E1.1.  (Id.).  The Court also overruled the Government's objection that Davis should have had a four-level increase for role in the offense pursuant to §3B1.1, rather than three levels.  (Id. at 36-37).  The Court asked Davis if she wanted to make a statement on her own behalf at sentencing, and Davis addressed the Court at some length but not distance herself from her counsel's strategy of disputing her involvement in the criminal conduct in 2013 and 2014.  (Id. at 41:3-42:3; 46:6-48:1).

The Court determined that the Total Offense Level was 20 and the Criminal History Category was IV, resulting in an applicable guideline range of 51 to 63 months incarceration on the wire fraud and access device counts. (Sent. Tr. at 37).  Neither party presented any reason why the Court should not proceed with the imposition of sentencing.  (Id.). The Court heard Davis's statement of information in mitigation of the sentence (id. at 38-41), and she personally addressed the Court (id. at 41-42, 46-57).   The Court imposed an aggregate sentence of 75 months incarceration, consisting of a 51-month low-end of the guidelines sentence for the wire fraud and access device fraud offenses, to be served consecutively to the mandatory 24-month sentence for the two counts of aggravated identity theft, and a supervised release term of three years.  (Id. at 48-49).

Davis filed an appeal in which she argued that the Court (1) erred in overruling her objections to the PSR with respect to the number of participants she recruited; (2) erred in finding that Davis's conduct began before 2015; (3) erred in finding Davis was a manager or supervisor of a criminal activity involving five or more participants; and (4) erred in denying her a two-level reduction for acceptance of responsibility.  The Eighth Circuit Court of Appeals denied each of Davis's arguments and affirmed the judgment.  United States v. Davis, 875 F.3d 869, 871-75 (8th Cir. 2017).

Davis filed petitions for rehearing and rehearing en banc with the Eighth Circuit, which were denied.  (ECF No. 156, Case No. 4:15-CR-572 RLW).  Davis filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on May 31, 2018.  (ECF No. 159, Case No. 4:15-CR-572 RLW).  Davis then timely filed the instant motion to vacate her sentence pursuant to 28 U.S.C. § 2255.

Davis asserts the following claims of ineffective assistance of counsel: [3]

1. Trial counsel was ineffective for failing to object to the misleading testimony of Postal Inspector Anne M. Kriedt during the sentencing hearing, and for failing to produce extrinsic evidence to contradict the misleading testimony;

2.  Trial counsel was ineffective for failing to object to the probation officer's inclusion of the 2013 Maryland Heights criminal activity in the relevant conduct determination;

3. Trial counsel was ineffective for failing to object to the two-level enhancement imposed pursuant to § 2B1.1(b)(10)(C) for transfer, possession, or use of a means of identification;

4. Trial counsel was ineffective for causing Davis to lose a reduction for acceptance of responsibility;

5. Trial counsel did not conduct voir dire to test the competency of the witness whose identification gave rise to the imposition of an enhancement for her role in the offense; and

---

[3]Davis makes three conclusory assertions of ineffective assistance of counsel on the Court-provided form Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, as follows:  Ground One: "Ineffective Assistance of Counsel (see memorandum attached)" (ECF No. 1 at 4); Ground Two: "Counsel failed to object to misleading testimony of a witness (see attached memorandum)" (id. at 5); Ground Three: "Counsel caused Denial of Acceptance of Responsibility (see attached memorandum)" (id. at 7).  The attached three-page Memorandum in Support (ECF No. 1-1) discusses these and other claims of ineffective assistance of counsel in no particular order, intermingled with claims of trial court error.  The Court has attempted to discern each separate ground asserted by Davis in the Memorandum in Support.

6.   Trial counsel failed to object to Agent Kriedt's unduly suggestive identification procedure in showing the victim, B.J., a Davis's photograph from her driver's license, rather than using a photo lineup.

Davis also asserts claims of trial court error.  She contends  the Court erred in (1) overruling her objection to a manager/supervisor role enhancement (ECF No. 1 at 8; ECF No. 1-1 at 2); (2) denying her acceptance of responsibility reduction because of the objections she made to the PSR (ECF No. 1-1 at 2); and (3) imposing the two-level enhancement from finding that her conduct in the offense began before 2015.

## II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  To warrant relief under § 2255, the errors of which movant complains must amount to a fundamental miscarriage of justice.  Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962).  The Supreme Court has stated that "a collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [s]he is entitled to no relief[.]"  Feather v. United States, 18 F.4th 982, 989 (8th Cir. 2021) (quoted case omitted).  But "no hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  Id.

**III. Discussion**

    A. <u>Claims of Trial Court Error</u>

    Davis asserts the Court erred by (1) overruling her objection to a manager/supervisor role enhancement, (2) denying her acceptance of responsibility reduction because of the objections she made to the PSR, and (3) imposing the two-level enhancement from finding that her conduct in the offense began before 2015.  Each of these claims of trial court error were raised on appeal and rejected by the Eighth Circuit Court of Appeals.  "[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." <u>Thompson v. United States</u>, 872 F.3d 560, 565 (8th Cir. 2017) (quoting <u>United States v. Davis</u>, 673 F.3d 849, 852 (8th Cir. 2013)).  Davis's claims of trial court error are procedurally barred and will be dismissed.

    B. <u>Claims of Ineffective Assistance of Counsel</u>

    To prove ineffective assistance of counsel, a defendant must demonstrate both that (1) her attorney's performance "fell below an objective standard of reasonableness," and (2) she was prejudiced as a result.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" <u>Id.</u> at 689.  If a defendant can meet the first part of the <u>Strickland</u> test, she must still show that counsel's deficient performance prejudiced her.  "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different." <u>Jackson v. United States</u>, 956 F.3d 1001, 1006 (8th Cir. 2020) (quoted case omitted).

    Generally, to establish prejudice where a defendant has entered a guilty plea, "the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>United States v. Frausto</u>, 754 F.3d 640, 643 (8th Cir. 2014) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  Here, Davis makes no

assertion that but for her counsel's alleged errors, she would not have entered a guilty plea. Instead, she asserts that but for counsel's errors, she would have received a lower guidelines range and a lower sentence. (ECF No. 1-1 at 3).

In some circumstances, a defendant who pleads guilty may establish prejudice under the second Strickland factor by showing she would have received a lesser sentence absent her counsel's ineffective assistance. The Eighth Circuit recently held that "[t]he "Strickland factors apply to claims arising from plea negotiations and the second prong is satisfied if accepting a plea offer would have resulted in a lesser sentence." Love v. United States, 949 F.3d 406, 409 (8th Cir.), cert. denied, 141 S. Ct. 576 (2020) (cited cases omitted). And under certain circumstances a defendant may "show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," by demonstrating among other things a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Missouri v. Frye, 566 U.S. 134, 147 (2012) (citing Glover v. United States, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance")); see Whittaker v. United States, 2014 WL 7335168, at *3 (E.D. Mo. Dec. 19, 2014) (citing Missouri v. Frye; holding movant could show prejudice on ineffective assistance claim for failure to object to use of prior convictions for armed career criminal status, if the end result would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time); see also Griffith v. United States, 871 F.3d 1321, 1336-39 & n.14 (11th Cir. 2017) (holding a § 2255 movant may establish prejudice by showing the district court relied on an incorrect, higher guidelines range, and that nothing else in the record indicates he would have received the same sentence anyway; citing Molina–Martinez v. United States, 136 S. Ct. 1338, 1347 (2016)).

The Court will assume for purposes of this opinion that Davis may show prejudice under the second <u>Strickland</u> prong by establishing that if her counsel had not been ineffective, she would have received a lower guidelines range and a lower sentence.

"'Surmounting <u>Strickland</u>'s high bar is never an easy task,' <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979)." <u>Lee v. United States</u>, 137 S. Ct. 1958, 1967 (2017).  "Judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." <u>Id.</u>

      1.  *Failure to Object to Misleading Testimony at Sentencing and to Produce Contradictory Extrinsic Evidence*

Davis's first ground is that her trial counsel was ineffective for failing to object to misleading testimony of Postal Inspector Anne M. Kriedt during the sentencing hearing and failing to produce extrinsic evidence to contract this testimony.  Davis states:

> [A]gent Kriedt testified that while Mr. Wilson was at the Schmuck's [sic] in Maryland Heights attempting to open accounts in someone else['s] name.  Ms. Davis was present in the surveillance video with a small child with Mr. Wilson. According to the police report in Exhibit (A) it states that when officers arrived to the scene at the bank, that Mr. Wilson was there and a small child was present. Never was Ms. Davis mentioned until later they stated a female was seen retrieving the child and headed to the restroom.  They approached the female after her exiting the restroom and she identified herself as Ms. Davis refer to Exhibit (A).

(ECF No. 1-1 at 2; Ex. A at 18-20 (Maryland Heights Police Department Office/Incident Report, dated Nov. 8, 2013)).  Although Davis does not identify the "extrinsic evidence" she claims her attorney should have produced, the Court will assume it is the police report attached to her § 2255 Motion.

Inspector Kriedt testified on direct examination that Davis's co-defendant Stacey Wilson was at the US Bank in the Maryland Heights Schnucks store attempting to open a bank account in someone else's name, "[a]nd in the video surveillance, there's a female and a small child and

Stacey Wilson all in the video.  The police walk up and they – or Candice Davis identifies herself as Candice Davis and then they discover Stacey Wilson was posing as another person to open the account." (Sent. Tr. at 8:3-10).  Kriedt testified that no charges were laid against Davis as a result of the conduct of being "seen in Maryland Heights." (Id. 8:11-14)  Kriedt was asked if Davis "was with Mr. Wilson as he was using a name other than his own in order to open an account through which fraud would be generated," and she answered, "That's correct." (Id. 8:14-18).

Thus, Inspector Kriedt's testimony placed Davis at the scene with Wilson, and Davis's attorney cross-examined Kriedt about this testimony.  Davis's attorney elicited testimony from Kriedt that Davis was never arrested and never charged in connection with the incident at the US Bank in November 2013.  (Sent. Tr. 16:5-20).  The attorney asked Kriedt, "But there was nothing to tie [Davis] into the actions of Mr. Wilson except for her physical presence," and Kriedt answered, "Correct." (Id. 16:21-23).  Davis's attorney asked if Kriedt talked to people in Maryland Heights regarding the 2013 incident and if they told her they never even questioned Davis at that time, and Kriedt testified, "I mean that's what the police report says.  So I would assume they never questioned her." (Id. 16:24-17:6).

To obtain relief, a § 2255 movant must show there is a reasonable probability that if an objection had been made, it would have been sustained, and the result of the proceeding would have been different.  See Sinisterra v. United States, 600 F.3d 900, 911 (8th Cir. 2010); United States v. Apfel, 97 F.3d 1074, 1076-77 (8th Cir. 1996).  "Failure to raise a meritless objection cannot support a claim of ineffective assistance." Sittner v. Bowersox, 969 F.3d 846, 853 (8th Cir. 2020).

While the government sought to draw an inference from Inspector Kriedt's testimony that Davis was present as a participant in Wilson's criminal activity at US Bank in November 2013, Inspector Kriedt did not testify that Davis took part in Stacey Wilson's criminal actions in

attempting to open the bank account.   Davis's attorney rendered constitutionally adequate assistance by cross-examining Kriedt to elicit clarifying testimony that Davis's physical presence was the only thing that tied her to Wilson's activities at the US Bank in Maryland Heights in November 2013, and further that Davis was not charged or even questioned in connection with the incident.  Trial counsel was not required to object during the government's direct examination of Inspector Kriedt, and such an objection would have been overruled.

Trial counsel's failure to introduce the police report during her cross-examination of Inspector Kriedt was a reasonable strategy that did not fall below an objective standard of reasonableness.  The police report attached to Davis's § 2255 Motion states that after police were contacted, they observed a Black male seated at a desk with a small child. (ECF No. 1-1 at 18). As one officer was speaking with the US Bank branch manager to get information, two other officers "observed a black female approach the subject seated at the desk.  The black female then walked to the store's restroom with the small child." (Id. at 19).  The Black female later identified herself as Davis.  (Id. at 19-20).  As stated above, trial counsel elicited testimony from Inspector Kriedt that only Davis's physical presence tied her to Stacey Wilson's actions at the US Bank, and that Davis was not charged or questioned about the incident.  Davis does not explain how questioning Inspector Kriedt with the police report would have elicited other information that would have assisted Davis's arguments.  Further, the police report appears to support Inspector Kriedt's testimony that "there's a female and a small child and Stacey Wilson all in the [surveillance] video."

Finally, Davis cannot show prejudice, because the Government also produced evidence through Inspector Kriedt's testimony and US Bank surveillance photographs that in May 2014, Davis deposited a check at a US Bank ATM into an account that had been opened for fraudulent purposes.  Thus, this criminal conduct also took place prior to 2015.

This ground will be dismissed.

   *2. Trial Counsel Was Ineffective For Failing to Object to the Probation Officer's*
   *Inclusion of the 2013 Maryland Heights Criminal Activity in the Relevant*
   *Conduct Determination*

In Ground Two, "Davis contends that counsel failed to make objections to findings of the

probation officer and calculation of Davis's criminal history enhancement despite clear and

convincing evidence of misleading testimony given at sentencing from Agent Kriedt." (ECF No.

1-1 at 2). This ground refers to both the PSR and to Inspector Kriedt's testimony concerning the

November 2013 Maryland Heights incident at the US Bank inside Schnucks.

   This ground is refuted by the record. Contrary to Davis's assertions, her trial counsel filed

a written objection to the Probation Officer's conclusions that she joined the criminal conspiracy

prior to 2015 and that two criminal history points were properly added to Davis's criminal history

score. (See Davis' Objs. to PSR, ECF No. 119 at 3-4, ¶ F; Final PSR, Addendum at 3-4 (ECF No.

128)). Further, as discussed above with respect to Ground One, trial counsel vigorously cross-

examined Inspector Kriedt with respect to her testimony concerning Davis's involvement in the

November 2013 incident at the US Bank, and reiterated Davis's objections to the PSR. Because

the record demonstrates that the omission Davis complains of did not occur, this ground will be

dismissed.

   *3. Failure to Object to Two-Level Enhancement of U.S.S.G. § 2B1.1(b)(10)(C) for*
   *Transfer, Possession, or Use of a Means of Identification*

In Ground Three, Davis asserts that trial counsel was ineffective for failing to object to a

two-level enhancement under Sentencing Guidelines § 2B1.1(b)(10)(C) for the unauthorized

transfer, possession, or use of a means of identification when determining the underlying offense

of conviction. (ECF No. 1-1 at 2). Davis contends the enhancement was misapplied because

Application Note 2 of § 2B1.6 states that the "means of identification" enhancement is not applied

if a sentence under that guideline is imposed in conjunction with a sentence for an underlying offense, as occurred in Davis's case because she was convicted of aggravated identity theft.  (Id.).

Davis's claim in Ground Three is factually incorrect because the two-level "means of identification" enhancement was not applied in Davis's sentence calculation.  It is legally incorrect because the claim appears to be based on an earlier version of the Sentencing Guidelines Manual than the 2016 Guidelines Manual that was used to determine Davis's offense level.  See PSR, ¶¶ 34 (ECF No. 128, No. 4:15-CR-572 RLW).

Under the applicable 2016 Guidelines Manual, § 2B1.1(b)(10)(C) provided for a two-level enhancement where an offense involved sophisticated means.  In the guilty plea agreement, Davis agreed to a two-level sophisticated means enhancement pursuant to § 2B1.1(b)(10)(C) (ECF No. 109 at 7), and she does not contend that enhancement was inappropriate.

Prior to the 2009 Sentencing Guidelines Manual, § 2B1.1(b)(10)(C) provided for a two-level enhancement if the offense involved the unauthorized transfer, possession, or use of a means of identification when determining the underlying offense of conviction.  See § 2B1.1(b)(10)(C), effective Nov. 1, 2008.  By the time Davis was sentenced, however, some section numbers in the Guidelines Manual had changed, and the two-level "means of identification" enhancement was moved to § 2B1.1(b)(11)(C).  As stated above, the "means of identification" enhancement of § 2B1.1(b)(11)(C) was not applied to Davis's sentence.  As a result, her attorney cannot have been ineffective for failing to object to such an enhancement.

Ground Three will be dismissed.

### 4. Trial Counsel Caused Davis to Lose Acceptance of Responsibility

In Ground Four, Davis states, "Counsel caused Denial of Acceptance of Responsibility." (ECF No. 1 at 7).  In the Memorandum in Support, Davis contends the Court erred in denying her an acceptance of responsibility reduction because she admitted guilt to all charges against her in a

timely manner, and "her right to enter objections was apart [sic] of her guilty plea."  (ECF No. 1-1 at 2).  As stated above, this claim of trial court error was raised and rejected on appeal and cannot be raised again in this § 2255 Motion.

With respect to her trial counsel, Davis asserts:

> Davis was advised by her attorney that it was better to have too many objections then [sic] not enough.  Davis was unaware and never told by her attorney that her objections affected her acceptance of responsibility.  Davis was also promised by her attorney that she would get her acceptance of responsibility back at her sentencing hearing.

(ECF No. 1-1 at 2).

As a threshold matter, Davis does not assert that there was any conflict with her counsel regarding filing objections to the PSR, or to the strategy followed during the sentencing hearing. This ground asserts only that Davis did not know she risked losing acceptance of responsibility by raising objections, and that her attorney incorrectly told her the Court would reinstate the acceptance of responsibility reduction that was omitted from the final PSR.  Davis does not assert that if her counsel had warned her of the possibility of loss of acceptance of responsibility by raising objections, she would have instructed counsel not to raise objections.

The record shows that Davis and her counsel pursued the strategy of challenging aspects of the offense conduct and sentencing enhancements throughout their attorney/client relationship. Davis signed the guilty plea agreement knowing it contained several instances in which the Government and Davis disagreed as to whether particular offense conduct or sentencing enhancements would apply.  (See ECF No. 109 at 7-8, Plea Tr. at 13-14, 16-18).  Davis's counsel pursued these disagreements on her behalf by filing objections to the PSR's recommendations that went against Davis's positions, and by challenging the government's evidence at the sentencing hearing.

Davis did not complain about or attempt to distance herself from this strategy when the Court gave her the opportunity to speak at sentencing.  Significantly, Davis's claims of ineffective assistance in Grounds One and Two of the instant § 2255 Motion assert that trial counsel did not object enough at the sentencing hearing to the PSR's findings and to Inspector Kriedt's testimony that Davis engaged in the conspiracy in 2013 and 2014.  This is the same argument that formed the basis for many of Davis's objections to the PSR: that she did not engage in criminal conduct until 2015.  Davis's objections that she did not actively participate in the conspiracy prior to 2015, in light of her agreement to the contrary in the PSR and the strong evidence at the sentencing hearing that she participated in criminal conduct on May 5, 2014, are what caused the Court to affirm the loss of acceptance of responsibility as it found these arguments "walk[ed] back the agreement" from the guilty plea.  (Sent. Tr. 32:2-33:12).

Davis's continued assertion of this same point, in two grounds of her § 2255 Motion, tends to indicate that trial counsel's strategy in filing numerous objections and pursuing them at sentencing aligned with Davis's wishes at the time.

The <u>Strickland</u> standard establishes a "high bar" for unreasonable assistance.  <u>Buck v. Davis</u>, 137 S. Ct. 759, 775 (2017).  Courts "will not find an attorney's performance constitutionally deficient unless it is outside the 'wide range of reasonable professional assistance.'"  <u>Love v. United States</u>, 949 F.3d 406, 410 (8th Cir. 2020) (quoting <u>Strickland</u>, 466 U.S. at 689).  "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that <u>Strickland</u>'s first prong is satisfied."  <u>Buck</u>, 137 S. Ct. at 775 (cleaned up).  Courts "make every effort to eliminate the 'distorting effects of hindsight' and consider performance from counsel's perspective at the time."  <u>Love</u>, 949 F.3d at 410 (quoted sources omitted).

"There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689.  Counsel will not be found deficient because she employed "a strategy that was unsuccessful or that might not have been adopted by a different attorney."  United States v. Rodriguez, 741 F.3d 908, 911 (8th Cir. 2014) (quoting Nave v. Delo, 62 F.3d 1024, 1036 (8th Cir. 1995)).

Here, although the strategy to raise objections to the proposed sentencing enhancements was unsuccessful, trial counsel was not outside the "wide range of reasonable professional assistance" for pursuing it.  If the strategy had been successful and the Court had upheld Davis's objections, her criminal history category would have been reduced and she may have regained the two levels for acceptance of responsibility.

Davis's claim that counsel did not inform her of the possibility of losing acceptance of responsibility because of raising objections to the PSR does not establish a basis for relief.  Taking Davis's claim as true – though it is raised only in the unverified Memorandum in Support – she was advised of the maximum possible penalty she faced on each count before she pleaded guilty. (Plea Tr. 14:24-15:24).  Davis was advised about the Sentencing Guidelines, that the parties' disagreements regarding the Guidelines and how they would apply to Davis would not be known until the PSR was prepared prior to sentencing, and that the Court would ultimately determine her sentence.  (Id. 15:25-19).  A defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences.  Thomas v. United States, 27 F.3d 321, 326 (8th Cir. 1994); accord United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999) (same; reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence).

Moreover, even if trial counsel had been outside the wide range of professional assistance by failing to inform Davis of the potential for loss of acceptance of responsibility as a result of filing objections, Davis cannot show prejudice because she does not assert that if she had known pursuing the objections might lead to the loss of acceptance of responsibility, she would have instructed her attorney not to follow that strategy.  Ultimately, based on the entire record, Davis's failure to receive credit for acceptance of responsibility, and potentially a lower sentence, is not attributable to her counsel's performance but to Davis's refusal to accept full responsibility for her actions.

This ground will be dismissed.

### 5. Trial Counsel's Failure to Conduct Voir Dire

In Ground Five, Davis asserts that her trial counsel was ineffective for failing to "request a voir dire to test the competence of the witness."  (ECF No. 1-1 at 2).  This relates to the source of Inspector Kriedt's hearsay testimony at sentencing with respect to the mentally disabled victim, B.J.  In support, Davis cites two out-of-circuit cases, neither of which has any relation to the issue presented in Ground Five.[4]  Davis does not offer any argument as to how voir dire of B.J. would have made a difference to her case.

At Davis's sentencing, the Government elicited testimony from Inspector Kriedt that she met with victim B.J. at the courthouse during the sentencing of Davis's codefendant, Stacey Wilson, while B.J. was waiting to testify.  B.J. told Kriedt he was walking to his apartment when a female in a vehicle pulled up and asked if he could help her cash checks, or if he had a bank account.  When B.J. said he had a bank account, she asked if he could help cash checks for her and her family, B.J. agreed to do that, and the female said she would pay him for each check he was

---

[4]Davis cites to <u>Griffith v. United States</u>, 871 F.3d 1321 (11th Cir. 2017), and <u>United States v. Anderson</u>, 712 F App'x 383 (5th Cir. 2017) (unpublished opinion).

able to cash.  (Sent. Tr. 6:12-24).  Kriedt testified that B.J. was one of the individuals whose account was fraudulently used in connection with the case to pass stolen or fraudulent checks.  It had originally been Kriedt's understanding that B.J. was recruited by Wilson, but the request to hold Wilson responsible for B.J.'s recruitment in the scheme was withdrawn.  (Id. 7:3-14).

On cross-examination, trial counsel elicited Kriedt's testimony that B.J. identified Davis from a photograph she showed him of Davis's driver's license picture.  (Id. 12:2-9).  Trial counsel asked about B.J.'s mental capacity, and Kriedt testified that B.J.'s mother said he has the mental capacity of a second grader or a nine-year-old.  Counsel asked if B.J. had been receiving Social Security payments for disability, and Kriedt testified his mother has received disability payments for him since he was nine.  (Id. 12:10-23).  Kriedt testified she had a conversation with B.J. while awaiting Wilson's sentencing, during which he also implicated Wilson.  (Id. 12:24-13:6).  Trial counsel asked if B.J. recollected what kind of vehicle had pulled up, and Kriedt testified that B.J. remembered it was in a newer model gray sedan.  Trial counsel then asked how long that had happened prior to Kriedt's conversation with B.J., and she responded that the incident had occurred approximately six or seven months before the conversation.  (Id. 13:13-20).  In response to trial counsel's question whether B.J.'s recitation of the facts was consistent with someone who had a second-grade mental capacity, Kriedt said "no."  (Id. 13:21-14:1).  Trial counsel asked if B.J.'s mother helped him with any information during the conversation and Kriedt testified she did not.  (Id. 14:2-5).  Trial counsel queried Kriedt twice more about B.J.'s ability to have specific recall, and again asked if his mother had helped him.  (Id. at 14:6-24).  Trial counsel also elicited that B.J. did not testify at Wilson's sentencing and that Inspector Kriedt had not had any contact with B.J. in the previous three to four months.  (Id. at 15:5-16:1).

Trial counsel made arguments to the Court objecting to PSR paragraph 13, which concerned the number of individuals recruited in the case, including B.J. who it described as

"mentally disabled."  (ECF No. 128 at 6, ¶ 13).  Trial counsel argued that Davis had nothing to do with recruiting B.J., and that "his mental status and his acuity could not have been nine months later to be described in detail as agent Kriedt has testified."  (Sent. Tr. 22:8-23).  The Court overruled the objection after hearing the Government's response.  (Id. 22:20-23:7).

Davis does not offer any legal citation or meaningful argument to support her conclusory assertion that trial counsel was ineffective for failing to conduct a voir dire of B.J.  In light of trial counsel's vigorous cross-examination of Inspector Kriedt concerning B.J.'s testimony and his mental capacity, and her arguments to the Court in support of Davis's objection, it was not outside the "wide range of reasonable professional assistance" for her not to voir dire B.J.  "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689.

Ground Five will be dismissed.

> 6. *Trial Counsel's Failure to Object to Agent Kriedt's Unduly Suggestive Identification Procedure in Showing the Victim, B.J., Davis's Driver's License Photograph*

In Ground Six, Davis asserts:

> Davis contends to Identification procedures that are subject to the constitutional review.  Davis states that Agent Kriedt testified that Davis was identified by the victim B.J. via a individual photo of a driver's license picture instead of being placed in a photo line up.  Neither did she produce any written statements, nor any evidence showing that the victim identified Davis as the person who recruited him.

> Davis contends that her attorney never objected to the identification procedures used to identify Davis, and never suggested that the procedures were unduly suggestive.

(ECF No. 1-1 at 2). [5]

Davis does not identify the constitutional right she claims was violated, or offer any legal citation to support her claim that trial counsel was ineffective for failing to object to Inspector

---

[5] The Court sets forth this ground exactly as shown on Davis's § 2255 Memorandum in Support, without correction of typographical or grammatical errors.  The United States did not respond to this ground.

Kriedt's testimony at the sentencing hearing that she showed B.J. a driver's license photo of Davis and he identified her from it.

Assuming Davis contends that her procedural due process rights were violated by this testimony, Davis does not offer any facts to explain why the identification was unduly suggestive, nor does she contend that B.J.'s identification of her was unreliable.   "A crime victim's identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and the suspect that is both impermissibly suggestive and unreliable."  United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006) (quoted case omitted).  "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification."  Id. (internal quotation marks and quoted case omitted).   "Even a suggestive out-of-court identification may be admissible if reliable."  United States v. Pickar, 616 F.3d 821, 827-28 (8th Cir. 2010) (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)).  In the absence of any facts alleged to support a claim that Davis's procedural due process rights were violated by the identification testimony, her trial counsel cannot be found ineffective for failing to object to it.

To the extent Ground Six asserts that Davis's Sixth Amendment right to confront and cross-examine her accuser was violated by Kriedt's identification testimony, the Eighth Circuit has held that the Confrontation Clause does not apply at sentencing hearings.  See United States v. Sheridan, 859 F.3d 579, 584-85 (8th Cir. 2017) (citing cases).  As such, trial counsel was not required to make such an objection to preserve Davis's constitutional rights.

Under these circumstances, the Court concludes Davis does not establish that it was outside the "wide range of reasonable professional assistance" for trial counsel not to object to Inspector Kriedt's testimony that she showed Davis's photograph to B.J. and that he identified her from it. Moreover, Davis makes no attempt to assert any resulting prejudice.

This ground will be dismissed.

25

IV.  Conclusion

For the foregoing reasons, the Court concludes that Davis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence should be denied in all respects.  No evidentiary hearing is required because Davis's claims are either inadequate on their face, the record affirmatively refutes the factual assertions upon which they are based, and/or the Motion and the files and the records of the case conclusively show she is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Candice A. Davis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's motions for summary judgment (ECF No. 8, 13, 15) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Movant's "Petitioner Motion Request for the Court to Change the Court's Case Management Order From Track 4, Because of Petitioner's Changed Circumstances Due to Being Release and Subsequent Prejudice Petitioner Suffers From the Court's Restitution Order in this Case" (ECF No. 16) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in Movant's § 2255 Motion.  See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000); Miller-El v. Cockrell, 537 U.S. 322, 342 (2003).

A separate judgment will accompany this Memorandum and Order.

Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 24th day of January, 2022.